UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEBORAH WEISER | CIVIL ACTION |
| VERSUS | NO: 20-2043 |
| ELIZABETH CASTILLE, ET AL | SECTION: "S" (2) |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure** (Rec. Doc. 133) filed by the City of Gretna, Belinda Constant, Mark Morgan, and Danika Gorrondona is **GRANTED** in part, and plaintiff's claims against them related to the permit issuance are **DISMISSED** for lack of jurisdiction;

**IT IS FURTHER ORDERED** that the alternative **Motion for Summary Judgment** (Rec. Doc. 133) filed by the City of Gretna, Belinda Constant, Mark Morgan, and Danika Gorrondona is **GRANTED** in part, and plaintiff's 42 U.S.C. § 1983 claims against them related to the lawn maintenance contract are **DISMISSED**;

**IT IS FURTHER ORDERED** that plaintiff's state law claims are **DISMISSED** for lack of jurisdiction.

I.  BACKGROUND

In underlying state court litigation, plaintiff, Deborah Weiser, sought to nullify certain acts of donation of real property by her deceased husband, Howard Weiser, Sr., to his daughter,

Elizabeth Castille,[1] including property located at 1518 Claire Avenue in Gretna, Louisiana. By judgment dated April 30, 2019, the 24th Judicial District Court rendered judgment in favor of Castille. Plaintiff herein appealed to the Louisiana Fifth Circuit Court of Appeal, which affirmed in an opinion dated March 17, 2020. The Louisiana Supreme Court denied writs on October 14, 2020.

Plaintiff disagrees with these rulings. She contends that as part of a racially-motivated conspiracy, the state courts failed to properly apply Louisiana law, and if they had done so, the rulings would have been in her favor. Plaintiff filed the instant federal suit seeking the reversal of state court decisions against her, including the return of property adjudicated in those proceedings, damages for violations of her rights, and declaratory relief.[2] In her federal suit, plaintiff alleges that her stepchildren, financial institutions, attorneys involved in state court litigation, judges who presided over plaintiff's state court cases, the City of Gretna, and Gretna city officials – individually and collaboratively – violated her state and federal rights. She alleges

---

[1] Weiser, Sr. (Castille's father) and plaintiff were married in 2004, divorced in 2014, and reconciled in 2015. They were married at the time of Weiser's death in 2018.

[2] Plaintiff's amended complaint invokes the following federal laws: 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act), the First and Fourteenth Amendments to the Constitution, Louisiana Constitution Articles I §§ 2 and 3, the Civil Rights Act of 1964, 42 U.S.C. §§§ 1983, 1985 (2) and (3), and 1986, the Fair Credit Reporting Act, 15 U.S.C. § 1681, and the Fair Debt Collection Act, 15 U.S.C. § 1692. Plaintiff alleges pendent state law claims, invoking Louisiana Code of Civil Procedure article 863, and Louisiana Civil Code articles 2298, 2315, 2316, and for Intentional Negligence, Intentional Infliction of Emotional Distress, Conversion, Mental Anguish, Tortious Interference with Contract, Breach of Contract, and violations of the Professional Code of Conduct, and the Louisiana Tort Claims Act. In addition, plaintiff invokes criminal statutes: Louisiana Revised Statutes title 14, sections 123 (perjury) and 133 (filing or maintaining false public records).

that these actors used fraudulent documents, statements, omissions, and actions in furtherance of the fraud. She argues that but for the fraud, legal error, and racial discrimination, she would have prevailed in all of her state court litigation.

The court previously dismissed the following defendants based on lack of jurisdiction: Judge Stephen D. Enright, Judge Stephen C. Grefer, Morrison Law Group, PLC, Ronald W. Morrison, Jr., First Horizon Bank, Konrad Law Firm, LLC, Gordon R. Konrad, 21st Mortgage Corporation, Elizabeth Castille, and Howard Weiser, Jr.

With respect to movants herein, the City of Gretna and Gretna officials, plaintiff alleges she was harmed in two ways: by the City of Gretna granting a permit to alter water lines on property at 1518 Claire Avenue before it was finally adjudicated to belong to Elizabeth Castille, and for terminating a lawn care contract with the City of Gretna, which she alleges was done based on her race and sex. In the instant motion, the City of Gretna and Mayor Constant, Morgan, and Gorrondona (hereinafter, sometimes "Gretna defendants") seek dismissal, arguing that this court lacks subject matter jurisdiction, based on the Rooker-Feldman doctrine. Alternatively, they seek summary judgment that plaintiff lacks evidence to support necessary elements of her claims, and further, that she cannot overcome a qualified immunity defense. In opposition, plaintiff argues that the Rooker-Feldman and qualified immunity do not apply.

## II. DISCUSSION

### A. Legal Standards

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." Ramming v.

United States, 281 F.3d 158, 161 (5th Cir. 2001). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id.  In a 12(b)(1) motion, the party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exists. Id.

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 477 U.S. 242 (1986).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

4

If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B. Motion to Dismiss Based on the Rooker-Feldman Doctrine

The Rooker-Feldman[3] doctrine bars federal courts from entertaining cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). "A state court judgment is attacked for purposes of Rooker–Feldman 'when the [federal] claims are "inextricably intertwined" with a challenged state court judgment,' Richard v. Hoechst Celanese Chem. Grp., Inc., 355 F.3d 345, 350 (5th Cir.2003), or where the losing party in a state court action seeks 'what in substance would be appellate review of the state judgment.' Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994)." Weaver v. Texas Cap. Bank N.A., 660 F.3d 900, 904 (5th Cir. 2011). Those who lose their cases in state courts have but one federal recourse, "an application for a writ of certiorari to the United States Supreme Court." Liedtke v. State Bar of Texas, 18 F.3d 315, 317 (5th Cir. 1994).

The Rooker-Feldman doctrine does not prohibit a plaintiff from "'present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a

---

[3] See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

case to which he was a party.'" Truong v. Bank of Am., N.A., 717 F.3d 377, 382 (5th Cir. 2013) (quoting Exxon Mobil Corp., 544 U.S. at 284). However, where the relief sought via the fraud claim requires reversal of the state court judgment, it is not independent. Id.; see also, e.g., Sookma v. Millard, 151 Fed. App'x 299, 300–01 (5th Cir. 2005) (Rooker–Feldman bars a federal plaintiff's claim that her state-court opponents and state judges conspired to deprive her of civil rights when she sought to enjoin enforcement of a state divorce decree.).

The court previously dismissed numerous defendants that plaintiff alleged had conspired to violate her constitutional and civil rights when, motivated by race, they colluded to obtain, enter, and enforce state court judgments to deprive her of property and grant it to her stepdaughter, Elizabeth Castille. As relief, plaintiff had sought to have the judgments declared null and void. Thus, the allegations presented a collateral attack on the state court judgments, for which the requested could not be granted without reversing the state court judgment. The court, applying the Rooker-Feldman doctrine dismissed those claims for lack of jurisdiction. The Gretna defendants now argue that the claims against them are also precluded by the Rooker-Feldman doctrine, because they also collaterally attack the state court judgment.

**1. Claim based on permit issuance**

Plaintiff alleges that due to her race, the Gretna defendants granted a permit to Castille before the property was adjudicated as belonging to Castille, thereby depriving her of federally protected property rights.[4] However, despite the timing of the permit issuance, the fact remains

---

[4] In connection with her opposition to the motion, plaintiff has not provided any copies of the permit application or permit, so it is not conclusively established that the permit was issued before title was adjudicated in Elizabeth Castille's favor. Nevertheless, on a motion to dismiss

that the property was adjudicated as belonging to Castille. Thus, thus plaintiff has no ownership right in the property to be enforced, or to be violated by state or municipal actors. The only means by which that could potentially change would be a reversal of the state court judgment in Castille's favor. Accordingly, this claim is inextricably intertwined in the state court judgment, and the Rooker-Feldman doctrine precludes this court's exercise of jurisdiction over the claim.

### 2. Claim based on lawn contract cancellation

Plaintiff also alleges that the Gretna defendants cancelled a long-term contract it made with plaintiff and her deceased husband based on her race and sex. The fact that ultimately a state court judgment was rendered in favor of Castille decreeing her to be the owner of the Claire Avenue property does not undermine these claims. No state court judgment adjudicating the lawn care claim has been supplied or referenced. Accordingly, these claims are independent of the state court adjudication and the Rooker-Feldman doctrine does not apply to deprive the court of jurisdiction over them.

### C. *Motion for Summary Judgment on Section 1983 Claims*

The Gretna defendants have alternatively moved for summary judgment on plaintiff's remaining claims stemming from the lawn care contract. Plaintiff's claims related to the lawn care contract are excerpted below:

> 68. Plaintiff and her husband, during his lifetime, negotiated and executed a contractual agreement with City of Gretna to provide lawncare services for the City.

---

under Federal Rule 12(b)(1), the court accepts the allegations as true. See Wooten v. Roach, 964 F.3d 395, 399 (5th Cir. 2020).

> 69. Plaintiff contends that, *their company* provided lawncare services for ten years on behalf of City of Gretna, and she was discriminated against on the basis of her race after her husband passed away.
>
> 70. Plaintiff contends that, she received disparage [sic] treatment by the City of Gretna, Mayor and staff members because of her race (black) and gender (female) terminating her contract and hiring a white entity owned by a white male.
>
> 71. Plaintiff avers that, defendant Mayor Brenda C. Constant's policies and custom upon the demise of her spouse, concocted a scheme to discriminate against her based on her race and sex terminating her contract and procured another White entrepreneur alleging Plaintiff did not meet the qualifications to perform lawn care services relative to RFP standards.
>
> 72. Plaintiff reiterates that, notwithstanding their entity [sic] tenure of services conducting lawn care services on behalf of the City of Gretna, defendant Brenda C. Constant deprived and denied her liberty to earn a living in her chosen profession and tortuously [sic] interfering with her contract by requiring her to compete in an RFP bid for the contract.
>
> 73. Plaintiff contends that, defendant Mayor Brenda C. Constant deprived and denied her property right and interest by terminating her contract and hiring a white male.

Plaintiff's Amended Complaint, Rec. Doc. 5 (emphasis added).

Parsing these allegations, it appears that as to the Gretna defendants, plaintiff alleges she was subject to disparate treatment in contracting based upon her race and gender, her procedural due process rights were violated when she was deprived of the lawn care contract with the City of Gretna, and the Gretna defendants violated state law when they tortiously interfered with the lawn care contract. Thus, the allegations incorporate both section 1983 and state law claims.

**1. Section 1983 claims**

Section 1983 provides a remedy against every person, who under color of state law,

deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. Olabisiomotosho v. City of Hous., 185 F.3d 521, 525 n. 3 (5th Cir. 1999). "To pursue a claim under section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law." Sw. Bell Tel., LP v. City of Hous., 529 F.3d 257, 260 (5th Cir. 2008).

Section 1983 actions are governed by the Rule 8 pleading standard set forth in Twombly and Iqbal. Arnold v. Williams, 979 F.3d 262, 267 (5th Cir. 2020). Rule 8(a)(2) requires a claimant to give "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard, a plaintiff must plead sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 678.

    a.   **Race-based disparate treatment claim**

Plaintiff alleges that the Gretna defendants treated her disparately in connection with the lawn care contract based upon her race. Such claims arise under 42 U.S.C. § 1981, and are cognizable under section 1983. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 731. Section 1981 prohibits intentional race discrimination with respect to certain enumerated activities, including contracting. Arguello v. Conoco, Inc., 330 F.3d 355, 358 (5th Cir. 2003). Included are the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a) & (b). Of course, "[a]ny claim brought under § 1981 ... must initially identify an impaired

'contractual relationship[ ]' ... under which the plaintiff has rights." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470 (2006) (internal citation omitted; footnote omitted). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." Id. at 476.

In moving for summary judgment, the Gretna defendants argue that plaintiff bears the burden of proof at trial on the elements of her claim, and she has pointed to no evidence to suggest the elements of her claim are satisfied. The court agrees. While it is undisputed that plaintiff is black, in opposing summary judgment, plaintiff has come forward with no evidence to establish that plaintiff ever had a contract with the City of Gretna that could have been illegally terminated.[5] Nor has she submitted any Statement of Contested Facts averring such. Plaintiff has failed to submit any evidence in support of her claims in response to the Gretna defendants' motion for summary judgment, and thus she cannot survive the motion for summary judgment on her section 1983 claims based on section 1981.[6]

---

[5]In fact, it is not entirely clear that the plaintiff was in privity of contract with the City of Gretna at all. Her allegations assert that her and her husband's *company* provided lawn care services to the City of Gretna, and she has not demonstrated that whatever agreement existed was not between the City and her husband (now deceased), or the City and an LLC (not a party to this litigation).

[6]In addition, it appears the claim may be prescribed. Courts considering section 1983 claims borrow the forum state's statute of limitations for personal injury claims. Redburn v. City of Victoria, 898 F.3d 486, 496 (5th Cir. 2018). Louisiana provides a one-year prescriptive period for such claims. LA. CIV. CODE art. 3492. Plaintiff alleges the contract was terminated upon the death of her husband, which occurred on March 28, 2018; plaintiff's suit was filed in July 2020, over two years later.

**b. Gender-based disparate treatment claim**

"[N]o court has held that allegations of gender based discrimination fall within [§ 1981's] purview." Washington v. National Oil Well Varco, L.P., 2022 WL 6250690, at *3 (N.D. Tex. Oct. 7, 2022) (citing Bobo v. ITT, Cont'l Baking Co., 662 F.2d 340, 342 (5th Cir. 1981) (other citations omitted). Accordingly, to the extent plaintiff's claims are based on gender discrimination, the claims are Equal Protection claims brought under section 1983.

The Equal Protection clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. It "essentially requires that all persons similarly situated be treated alike." Glass v. Paxton, 900 F.3d 233, 244 (5th Cir. 2018) (citing Mahone v. Addicks Util. Dist.of Harris Cnty., 836 F.2d 921, 932 (5th Cir. 1988)). Accordingly, to prevail on a claim of gender discrimination under the Equal Protection clause a plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." Priester v. Lowndes Cnty., 354 F.3d 414, 424 (5th Cir. 2004) (quoting Taylor v. Johnson, 257 F.3d 470 (5th Cir. 2001)). To establish discriminatory intent, a plaintiff must show "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." Fennell v. Marion Indep. Sch. Dist., 804 F.3d 398, 411–12 (5th Cir. 2015) (internal quotations omitted)). "Allegations of discriminatory intent that are merely conclusory, without reference to specific facts, will not suffice." Id. (internal quotations omitted).

In this case, plaintiff has not adequately alleged, nor pointed to evidence that would

establish, that the Gretna defendants acted with discriminatory intent. Her sole supporting allegations are that after her husband's death, the contract was given to a white male. In addition to the fact that such conclusory allegations are insufficient, plaintiff's complaint acknowledges a non-discriminatory reason for the City's action: that the award was based on the fact that she was determined not to meet the requirements of the City's Request for Proposals ("RFP"). Defendants have pointed to a lack of evidence necessary to plaintiff's claim, and plaintiff has failed to provide "any evidentiary basis on which the court might find that the [defendants] intended to discriminate against [her]." Crain v. City of Selma, 952 F.3d 634, 642 (5th Cir. 2020) (internal quotations omitted). The Gretna defendants are therefore entitled to summary judgment on plaintiff's Equal Protection claim.

    c. **Due Process claim**

Plaintiff also alleges that in terminating the lawn care contracts, the Gretna defendants deprived her of a property right in violation of the Due Process clause. The Due Process clause prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Thus, to state a claim, a plaintiff must, at a minimum, allege a deprivation of life, liberty, or property. In this case, plaintiff contends that she has a property interest in a contract for lawn care with the City of Gretna.

As previously discussed in connection with plaintiff's section 1981 claim, in responding to the Gretna defendant's motion for summary judgment, plaintiff has not come forward with any evidence of a contract with the City of Gretna, nor an ownership interest in one. Again, the defendants have pointed out the absence of evidence supporting the essential elements of the

plaintiff's case, and plaintiff has not come forward with any supporting evidence to establish this claim. See Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991). Accordingly, defendants are entitled to summary judgment on plaintiff's Due Process claim.

### 3. State Law claims

Plaintiff alleges a claim for tortious interference with contract against the Gretna defendants, which, if cognizable, would arise under state law. However, in the Fifth Circuit, the "'general rule' is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." Batiste v. Island Recs. Inc., 179 F.3d 217, 227 (5th Cir. 1999). All federal claims as to all defendants having been eliminated in this matter, to the extent plaintiff intended to direct any of her state law claims to the Gretna defendants, the court declines to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3). Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that the **Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure** (Rec. Doc. 133) filed by the City of Gretna, Belinda Constant, Mark Morgan, and Danika Gorrondona is **GRANTED** in part, and plaintiff's claims against them related to the permit issuance are **DISMISSED** for lack of jurisdiction;

**IT IS FURTHER ORDERED** that the alternative **Motion for Summary Judgment** (Rec. Doc. 133) filed by the City of Gretna, Belinda Constant, Mark Morgan, and Danika Gorrondona is **GRANTED** in part, and plaintiff's 42 U.S.C. § 1983 claims against them related to the lawn maintenance contract are **DISMISSED**;

**IT IS FURTHER ORDERED** that plaintiff's state law claims are **DISMISSED** for lack

of jurisdiction.

New Orleans, Louisiana, this  14th  day of October, 2022.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**